TAYLOR v. BREWER & CO.

(October 23, 1900.)

1. *Chattel Mortgage—Tender—Sale—Trover—Conversion.*

A mortgagee unnecessarily selling, after a full and lawful tender, would be guilty of a breach of trust and thereby render himself liable to the injured party.

2. *Trover — Conversion — Chattel Mortgage—Mortgagor-— Agent—Sale—Evidence.*

It is error in an action by mortgagor for conversion, to exclude evidence that property was delivered by mortgagor to agent of mortgagee with authority to sell and apply proceeds to payment of certain debts.

CIVIL ACTION by R. M. Taylor against W. C. Brewer & Co., heard by Judge *J. W. Bowman* and a jury, at Spring Term, 1900, of FRANKLIN Superior Court. From judgment for plaintiff, defendants appealed.

*B. B. Massenburg* and *W. M. Person,* for plaintiff.
*N. Y. Gully,* for defendants.

DOUGLAS, J.   This is a civil action for damages for the wrongful conversion of certain personal property, to-wit, a horse, buggy, and harness, or rather the proceeds thereof.   It appears that the plaintiff executed to the defendants a mortgage upon his crop as well as upon his horse, buggy and harness.   Whether there were two mortgages given to defendants, or only one mortgage covering all the property, does not clearly appear, nor would it make any apparent difference.   The plaintiff. also executed a mortgage upon his crop to Mrs. Rayborn, but whether before or subsequent to the Brewer mortgage seems equally uncertain.   There is,

however, no question of priority, and, indeed, no apparent conflict of interest, between the mortgagees, only one of whom is a party to this action. All three mortgages were placed in the hands of the witness, Gulley, for collection or foreclosure, who wrote to the plaintiff, asking him to pay them, or to bring back the horse, buggy, and harness, and deliver them to be sold for that purpose. In a few days the plaintiff delivered the said property to the said Gulley, at the same time putting him in possession of the crop. It seems that nearly all the defendants' debt was paid from the proceeds of the crop, the doubly-charged property, leaving a balance of $12.46 as claimed by the defendants, and $6.62 as found by the jury. The said Gulley, ostensibly acting as attorney for the defendants and Mrs. Rayborn, sold the horse, buggy, and harness for $28.50, paid $12.46 to the defendants, $20.70 to Mrs. Rayborn, and tendered $1.88 to the plaintiff. Before such sale the plaintiff tendered to the defendants the full amount due them, and forbade the sale. This tender was refused, although it was clearly the duty of the defendants to accept it, if full, free, and unconditional. We do not mean to say that the legal effect of such a tender was to discharge the lien. That question is not before us, as the plaintiff is not seeking to recover the property sold. In any event, a mortgagee unnecessarily selling, after a full and lawful tender, would be guilty of such a breach of trust as would render him liable to the injured party. Hence we see but little error in the case, as tried, especially as there is no exception to the Judge's charge; but there is an exception to the exclusion of evidence which we think was competent, and which, if admitted, might have materially changed the character of the action. It appears in the record that "counsel for defendant then stated that they proposed to show that the property was delivered to Gulley by the

plaintiff, with instructions to sell it, and pay the Rayborn mortgage and the Brewer mortgages. His Honor excluded the testimony, and ruled that, if plaintiff had directed Gulley by parol to sell the property, and pay off the Rayborn debt and the Brewer mortgages, that he could revoke that authority at any time." In this there was error. We do not see why the plaintiff could not lawfully have placed the property in Gulley's hands to be applied to the Rayborn debt, subject, of course, to the prior lien of the defendants. Such action, including manual delivery, would be equivalent to a pledge of the equitable interest, especially as Gulley appears to have been the attorney of the creditors, and not of the debtor. Even if Gulley had been the mere agent of the plaintiff, we doubt if the latter could have revoked his authority after he had used the proceeds of the doubly-charged fund to exonerate the property now in dispute, especially if by so doing he had incurred any personal responsibility. Moreover, in that event, how would the defendants have been liable for a mere breach of duty by the plaintiff's agent? We can not tell what the excluded evidence might have proved if it had been admitted, but it is at least possible that it might have raised questions of equitable rights, such as contribution or estoppel. In this event, other excluded evidence—such as that showing the disposition of the crop— might have become competent. As it seems to us that the exclusion of competent evidence prevented the proper development of the defense, a new trial should be ordered. The defendants are entitled to show for what purposes and on what conditions the property was placed in the hands of Gulley.

New trial.